IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KIRK M.,[1]                                                    No. 6:17-cv-01663-HZ

            Plaintiff,                                         OPINION & ORDER

    v.

COMMISSIONER, Social Security
Administration,

            Defendant.


HERNÁNDEZ, District Judge:

        Plaintiff brings this action for judicial review of the Commissioner's final decision

denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act in part. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42

U.S.C. § 1382(c)(3)). Because the Administrative Law Judge (ALJ) improperly discounted

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for non-governmental party's immediate family members.

medical opinion testimony, the Court REVERSES the Commissioner's decision and REMANDS this case for further administrative proceedings.

BACKGROUND

Plaintiff was born on January 15, 1961 and was fifty years old on February 1, 2011, the alleged disability onset date. Tr. 210, 970.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through September 30, 2016. Tr. 973. Plaintiff has at least a high school education but is unable to perform any past relevant work. Tr. 982. Plaintiff claims he is disabled based on conditions including memory loss, vision loss, high blood pressure, depression, anxiety, and claustrophobia. Tr. 238.

Plaintiff's benefits application was denied initially on November 13, 2012, and upon reconsideration on March 5, 2013. Tr. 970. A hearing was held before Administrative Law Judge Paul Robeck on June 20, 2014. *Id.*; Tr. 41–85. ALJ Robeck issued a written decision on June 26, 2014, finding that, as of January 1, 2014, Plaintiff was disabled and entitled to benefits. Tr. 970; 20–33. Plaintiff was therefore not disabled or entitled to benefits between November 1, 2011 and December 31, 2013. Tr. 20–33. The Appeals Council declined review, rendering ALJ Robeck's decision the Commissioner's final decision. Tr. 1–6. Plaintiff then challenged the Commissioner's final decision in the District of Oregon. Tr. 970. On August 17, 2016, the district court remanded the case to the Commissioner for additional administrative proceedings. *Id.* On November 14, 2016, the Appeals Council remanded the case but only as it related to the period prior to January 1, 2014. *Id.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 14.

Upon remand, a new hearing was held before ALJ Robeck on May 2, 2017. The ALJ issued a written decision on July 5, 2017, finding that, as of January 28, 2014,[3] Plaintiff was disabled and entitled to benefits. Tr. 970–84, Plaintiff was therefore not disabled or entitled to benefits between November 1, 2011 and January 27, 2014. *Id.* The Appeals Council declined review, rendering ALJ Robeck's decision the Commissioner's final decision. Tr. 1051–56.

The central issue here is whether the ALJ properly determined that Plaintiff was not disabled during the relevant time period: February 1, 2011 through January 28, 2014.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

---

[3] Although the district court reversed only the ALJ's decision finding no disability before January 1, 2014, the ALJ concluded that January 1, 2014 was a typographical error in the original opinion and Plaintiff was only disabled as of January 28, 2014.

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

<u>THE ALJ'S DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 973.

At step two, the ALJ determined that as of February 1, 2011, Plaintiff "had the following severe impairments: status post left rotator cuff surgery, mild narrowing of the medial compartment of the left knee and chondrocalcinosis of the right knee per x-ray, adjustment disorder with depression and anxiety, personality disorder, and methamphetamine and alcohol abuse." Tr. 973. Beginning on January 28, 2014, the ALJ found Plaintiff's cognitive disorder to be severe as well. *Id.* The ALJ determined that Plaintiff's gastroesophageal reflux disease, depression, anxiety, and history of cocaine abuse were not severe. *Id.*

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. Tr. 973–74. In particular, the ALJ found that Plaintiff's physical conditions did not meet the requirements of Listing 1.02 or 1.04, and his mental impairments did not satisfy paragraph "C" of the applicable mental disorder listings. Tr. 974.

Before proceeding to step four, the ALJ found that, before January 28, 2014, Plaintiff had the residual functional capacity (RFC) to perform light work except that "he could occasionally balance, climb, stoop, kneel, crouch, or crawl, needed to avoid concentrated exposure to vibration, was limited to unskilled work, and could have occasional public contact." Tr. 974. Beginning on January 28, 2014, the ALJ concluded that Plaintiff's "cognitive/memory impairment [became] severe enough to preclude sustaining fulltime work." Tr. 981.

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. Tr. 982.

At step five, the ALJ relied on the testimony of a vocational expert to find that prior to January 28, 2014, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. 982–83. After January 28, 2014 there were no jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 983.

Accordingly, the ALJ concluded that the Plaintiff was not disabled prior to January 28, 2014 but became disabled, and remained disabled, as of that date. Tr. 984.

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal

quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

<u>DISCUSSION</u>

Plaintiff raises six issues on appeal. He argues the ALJ erred by: (1) improperly rejecting medical opinion testimony; (2) improperly categorizing certain impairments as non-severe at step two; (3) improperly evaluating lay witness statements; (4) improperly rejecting Plaintiff's subjective symptom allegations; (5) failing to conduct an adequate analysis at step five; and (6) establishing an improper onset date. Because the ALJ improperly rejected medical opinion testimony, the Commissioner's decision is reversed and remanded for further administrative proceedings.

**I.     Medical Opinion Testimony**

Plaintiff first argues the ALJ improperly rejected the opinions of five medical sources. Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. *Id.*; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). More weight is also given to an examining physician than to a nonexamining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating

physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). And, when a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); Id. at 1161; *Orn*, 495 F.3d at 632–33. "These factors include the '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole." *Ghanim*, 763 F.3d at 1161 (quoting 20 C.F.R. § 404.1527(c)(2)-(6)).

### 1. Bassel Beitnejaneh, MD

Dr. Beitnejaneh examined Plaintiff in February 2011. He opined, in part, that Plaintiff was limited to walking four hours in an eight-hour work day due to knee pain. Tr. 344. The ALJ gave this opinion "only some weight because the restrictions related to the claimant's mild shoulder condition are supported by an impairment but knee pain and back pain are not diagnoses. Therefore, the limitations based on those symptoms, are not valid." Tr. 979. The ALJ

also noted that "[w]hile later x-rays of the knees identified some mild findings, there was nothing that really supported the stand/walk limitation[.]" *Id.*

The ALJ did not provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting these limitations. Dr. Beitnejaneh did not simply diagnose knee pain, but rather "knee pain, most likely secondary to arthritis." Tr. 344. Arthritis is a diagnosis, and knee pain a common result of that possible diagnosis. Moreover, the ALJ himself listed "mild narrowing of the medial compartment of the left knee and chondrocalcinoses of the right knee per x-ray" as severe impairments in the step two analysis. Tr. 973.

While Defendant points out that, at a later physical examination, Plaintiff had no swelling, tenderness, or pain; a full range of motion, and strength; and a normal gait, the ALJ did not raise these arguments in rejecting Dr. Beitnejaneh's opinion. A district court cannot affirm the Commissioner's decision on grounds that the ALJ did not invoke. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citations omitted); *see also Trevizo v. Comm'r*, 871 F.3d 664, 677 n.4 (9th Cir. 2017) (holding that the district court erred in looking beyond the ALJ's stated reasons and explanation to support the ALJ's opinion); *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that district courts cannot affirm the agency on grounds not invoked by the ALJ without violating the *Chenery* rule). The ALJ erred in failing to provide specific and legitimate reasons for rejecting Dr. Beitnejaneh's medical opinion.

### 2. Richard Gil, MD

Dr. Gil examined Plaintiff in October 2012. Dr. Gil concluded, in part, that Plaintiff should be restricted to occasional manipulative activities because of his visual impairments. Tr. 390. The ALJ gave no weight to this finding. Tr. 979. Instead, the ALJ concluded "there [was] no apparent connection between the limitation and the impairment;" "blind people rely on their

ability to reach, handle, finger and feel to get by in this world[;]" and "all the claimant may need is a pair of prescription glasses to resolve the issue." Tr. 979.

While specific, these reasons are not legitimate. That a visually impaired person may be limited in his or her ability to manipulate objects is a reasonable conclusion. While there is evidence in the record that Plaintiff is visually impaired, there is no indication he is blind, or that his impairment might lead to a heightened "ability to reach, handle, finger and feel,"—abilities which the ALJ speculates are somehow necessary and natural adaptations for the visually impaired. While Plaintiff does appear to have received a new prescription following Dr. Gil's examination, there is no evidence that this prescription resolved Plaintiff's visual impairments. Moreover, although Dr. Gil noted that Plaintiff's glaucoma was "stable," stable does not mean resolved. Because the ALJ did not provide legitimate reasons, this testimony was improperly rejected.

### 3. Tom Dooley, Psy.D.

Dr. Dooley examined Plaintiff in September 2012. He opined, in part, that Plaintiff struggled with depression and anxiety, and "presented as of below average IQ, with difficulty thinking in abstract terms." Tr. 383. The ALJ rejected this opinion because Plaintiff led a "'somewhat busy life' doing household chores and driving neighbors to their appointments, which does not sound like someone who is significantly limited physically or for that matter, mentally." Tr. 980. He also noted that Plaintiff rated his depression and anxiety as "only moderate" and that Plaintiff was looking for lighter work. *Id.*

Plaintiff argues only that the ALJ's "reasoning is neither specific nor legitimate" and that Dr. Dooley's opinion, when "properly evaluated," makes clear that Plaintiff's "cognitive functioning was in significant decline by mid-2012." Pl.'s Br. 12. The Court does not agree. Dr.

Dooley conducted a single interview with Plaintiff. This interview—uncorroborated by objective medical evidence or clinical findings—does not support Plaintiff's allegations of cognitive decline. While Plaintiff complained of short-term memory problems, Plaintiff denied any long-term issues. While Dr. Dooley diagnosed Plaintiff with depression and anxiety, and noted that he presented as "below average IQ," he made no reference to, or findings of, cognitive decline. Thus, the ALJ did not err in rejecting this opinion.

### 4. Safina Koreishi, MD

Dr. Koreishi was Plaintiff's primary care physician. On June 24, 2013, she wrote a letter stating that Plaintiff suffered from "significant loss of memory and depression." Tr. 980; 402. The ALJ gave Dr. Koreishi's opinion "little weight because the medical evidence thus far had indicated moderate memory and depression issues at most." Plaintiff argues only that "the record demonstrates that Mr. Morris's memory was impaired prior to January 1, 2014." Pl.'s Br. 12.

The ALJ did not indicate that Dr. Koreishi's opinion was contradicted by another doctor. Thus, the ALJ was required to provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting the opinion. Here, the ALJ concluded that Dr. Koreishi's opinion was inconsistent with the medical record and was not based on formal testing or objective medical evidence. Tr. 980. The ALJ also concluded that this opinion was not consistent with the severity of symptoms found at the consultative examinations or Plaintiff's "relatively significant daily activities." *Id.*

An ALJ may reject a medical opinion that is based entirely on a claimant's subjective complaints. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). At the time Dr. Koreishi wrote her letter, no objective medical tests had been performed. Indeed, Plaintiff's first MRI was performed in December 2013—six months after Dr. Koreishi's letter. Rather than objective tests,

Dr. Koreishi's opinion regarding Plaintiff's mood and memory loss appears to be based entirely on Plaintiff's subjective complaints.

An ALJ may also reject an opinion that is inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, the ALJ noted that while Dr. Koreishi stated that Plaintiff had "significant loss of memory and depression," the "rest of the record indicated moderate memory and depression issues at most." Tr. 980. For example, treatment notes from January 1, 2013 state that Plaintiff was "alert and oriented" and presented with normal cognition and memory. Tr. 428. Treatment notes from April 16, 2013 indicated "gross exam normal," with memory loss possibly "related to mood." Tr. 409. While Dr. Koreishi noted Plaintiff's complaints of memory loss, she also delayed scheduling any further evaluation until Plaintiff's next visit, two months later. Tr. 410. In fact, the first objective medical tests related to Plaintiff's cognitive decline were not performed until six months after Dr. Koreishi's letter. Treatment notes from 2013 also state that counseling and medication were helping with Plaintiff's depression. Tr. 413, 551, 589.

Finally, an ALJ may reject an opinion that is inconsistent with a claimant's daily activities. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). As an initial matter, the Court does not agree that Plaintiff engaged in "significant daily activities." The ALJ wrote, for example, that Plaintiff cared for himself and his home, and assisted elderly neighbors with their activities. In his function report, dated July 17, 2012 (almost a year before Dr. Koreishi's letter), Plaintiff reported performing some chores, including "laundry, household repairs, ironing, dishes, floors, yard." Tr. 256. However, Plaintiff also reported shopping only monthly and no longer having any hobbies. Tr. 256–57. By "assisting elderly neighbors," the ALJ seems to point to the fact that Plaintiff reported driving neighbors to appointments in September 2012. Tr. 383.

However, Plaintiff testified in June 2014 that he stopped driving almost a year earlier. Tr. 48. Additionally, the ALJ did not discuss how these activities are inconsistent with depression or cognitive decline. The Court therefore finds the ALJ erred in relying on Plaintiff's activities of daily living.

Even though the ALJ erred in relying on Plaintiff's daily activities, the Court finds that the ALJ's other reasons for discounting Dr. Korieshi's opinion are sufficient to uphold the ALJ's overall rejection of this medical opinion. *See Batson*, 359 F.3d at 1197 (holding that error by an ALJ as to one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record). Therefore, this error was harmless.

### 5. Paul Rethinger, Ph.D.

Plaintiff argues the ALJ improperly rejected Dr. Rethinger's opinion. Dr. Rethinger is a state agency psychological consultant. The ALJ did not reject Dr. Rethinger's opinion. Rather, the ALJ gave this opinion "great weight because it is supported by the claimant's symptoms." Tr. 979.

## II. The ALJ's Analysis at Step Two

Plaintiff contends the ALJ erred at step two by failing to categorize the following impairments as severe: "numerous surgeries of the bilateral knees, with ER visits for debilitating pain, providing objective support for the opined stand/walk limitations; glaucoma/cataracts, with decreased vision, history of traumatic head injury with progressive cognitive decline thereafter." Pl.'s Br. 13.

The ALJ considers the severity of the claimant's impairment(s) at step two. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe, medically

determinable physical or mental impairment that meets the duration requirement, or a combination of impairments that is severe and meets the duration requirement, the claimant is not disabled. *Id.*

A severe impairment is one that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are the abilities and aptitudes necessary to do most jobs, including physical functions such as walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out, and remembering simple instructions.  20 C.F.R. §§ 404.1522(b), 416.922(b). In Social Security Ruling ("SSR") 85-28, the Commissioner explained that "an impairment is not severe if it has no more than a minimal effect on an individual's physical or mental ability(ies) to do basic work activities." 1985 WL 56856, at *3, (Jan. 1, 1985) (quoting 20 C.F.R. 404.1521(a) and 416.921(a)); *see also* SSR 96-3p, 1996 WL 374181, at *1 (July 2, 1996) ("[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

"[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. at 153–54). "[T]he severity regulation is to do no more than allow the [Social Security Administration] to deny benefits summarily to those applicants with impairments of a minimal nature which could never prevent a person from working." SSR 85-28, 1985 WL 56856, at *2, (Jan. 1, 1985) (internal quotation omitted). "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017). When determining the claimant's RFC, the ALJ must consider "limitations and restrictions imposed by all of an individual's impairments, even those that are

not 'severe.'" *Id.* at 1049 (citation omitted). "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* Therefore, where the ALJ fails to list a medically determinable impairment at step two, but nonetheless considers the limitations posed by the impairment in the RFC, any error at step two is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ considered all limitations—including those Plaintiff contends were omitted from the step two analysis in error—when determining Plaintiff's RFC. For example, the ALJ addressed Plaintiff's subjective knee pain by citing treatment notes that state Plaintiff "had a full affect, and his gait and strength were normal. His bilateral knees were not swollen, were non-tender, had full range of motion, had full strength, and had no pain." Tr. 976. The ALJ considered Plaintiff's vision issues—including cataracts and glaucoma—and noted a doctor's opinion that the conditions were stable and only "minimally affected activities of daily living." Tr. 976. The ALJ considered Plaintiff's cognitive decline, noting that although Plaintiff reported "having a hard time with memory," possible secondary gain was at issue and there were inconsistencies in his presentation. Tr. 976. While the ALJ did not include limitations based on these impairments in the ultimate RFC, he did consider them. Any error at step two was therefore harmless.

### III.    Lay Witness Statements

Plaintiff argues the ALJ improperly discounted the lay witness statements of his brother, Kenneth Morris, and his friend and neighbor, Maureen Weil. Pl.'s Br. 12–14. Specifically, Plaintiff argues the ALJ did not identify what objective evidence or daily activities were inconsistent with Plaintiff's alleged "few household chores" when rejecting Mr. Morris's opinion and provided no reasoning related to Ms. Weil.

Kenneth Morris provided a function report and testified at Plaintiff's initial hearing. Tr. 71–80; 268–75. Ms. Weil submitted a written statement. Tr. 276–77. The ALJ discounted both individuals' testimony, writing only:

> The claimant's brother submitted a function report in July 2012 but it is not consistent with the medical evidence from that time (Ex. 8E). He indicated that the claimant did few household chores while the claimant has repeatedly reported doing quite extensive daily activities, which is more consistent with the objective evidence. Likewise, as to the written statement by the claimant's friend, Maureen Weil. (Ex 8E/9-10).

Tr. 980.

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Examples of germane reasons include conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001).

While the ALJ must provide germane reasons for discounting lay witness testimony, the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. If the ALJ gives germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Moreover, "in rejecting lay testimony, the ALJ need not cite the specific record as long as 'arguably germane reasons' for dismissing the testimony are noted, even though the ALJ does 'not clearly link his determination to those reasons,' and substantial

evidence supports the ALJ's decision." *Smith v. Colvin*, 2015 WL 6454877, at *2 (W.D. Wash. Oct. 16, 2015) (quoting *Lewis*, 236 F.3d. at 512). The ALJ may also "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Here, the ALJ provided germane reasons for rejecting lay witness testimony. The ALJ rejected Mr. Morris's testimony because it was inconsistent (1) with the medical evidence and (2) with Plaintiff's own statements. Tr. 980. As an example, the ALJ noted that while Mr. Morris stated that Plaintiff "did few household chores," Plaintiff "repeatedly reported doing quite extensive daily activities." *Id.* The record reasonably supports this inconsistency. For example, Plaintiff reported performing household chores such as "laundry, household repairs, ironing, dishes, floors, yard." Tr. 256. In contrast, Mr. Morris wrote that Plaintiff could not perform many chores and "it take[s] him a long time just to do laundry." Tr. 270.

The ALJ also dismissed Ms. Weil's statement, but without individualized reasons. An ALJ is not required, however, "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. While Ms. Weil's statement did not specifically address Plaintiff's ability to perform household chores, the record reasonably supports the conclusion that her statement was again inconsistent with the medical evidence and with Plaintiff's own statements. For example, while Ms. Weil stated that Plaintiff could not see, tr. 276, Plaintiff stated he could see well enough to drive neighbors to their appointments, tr. 383.

The ALJ provided germane, if cursory, reasons supported by evidence in the record for rejecting lay witness testimony. Accordingly, the ALJ did not err in this analysis.

IV.   **Plaintiff's Subjective Symptom Testimony**

Plaintiff claims the ALJ improperly discounted his subjective symptom testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1

(Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (quotation and citation omitted) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons"); *see also Molina*, 674 F.3d at 1112 (internal quotation marks omitted) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms."). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a claimant's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ provided clear and convincing reasons supported by substantial evidence in the record for rejecting Plaintiff's subjective symptom testimony. In evaluating Plaintiff's physical symptoms, the ALJ relied on Plaintiff's conservative treatment and a lack of objective medical evidence to conclude that his impairments did not result in significant functional limitations prior to January 28, 2014. Tr. 978. For example, the ALJ noted that Plaintiff declined physical therapy for his shoulder and "seemed to do well with just over the counter pain medication." *Id.* The ALJ also discussed a lack of objective medical evidence supporting Plaintiff's bilateral knee limitations, including a "physical examination [that] revealed no swelling, non-tender, full range of motion, full strength, and no pain." *Id.*

In evaluating Plaintiff's complaints of memory loss and cognitive decline, the ALJ appears to have relied on inconsistencies in Plaintiff's statements and a lack of objective medical evidence. The ALJ noted, for example, that Plaintiff's "presentation regarding his memory varied wildly during the period at issue." *Id.* While the ALJ did not cite the record here, he did highlight possible reasons for these unidentified inconsistencies, including drug use, exaggeration, and possibly factitious behavior "due to stress and trauma of [a] past relationship." *Id.* Each reason is supported by the record. *Id.* Additionally, the ALJ identified inconsistencies with more specificity earlier in the same section, including, for example, a 2012 gross exam that was normal, and 2013 treatment notes that described Plaintiff as "alert and not confused." Tr. 976; *see also Perkins v. Colvin*, 45 F. Supp. 3d 1137, 1149 (D. Ariz. 2014) (finding the ALJ's discussion of inconsistent treatment notes that appeared earlier in the ALJ's decision sufficient to support rejection of examining physician's opinion); *Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1159–60 (D. Or. 2011) (finding the ALJ's thorough discussion and evaluation of the medical evidence later in the decision satisfactory to support his finding at step three).

The ALJ also relied on a lack of formal memory testing and objective medical evidence. Tr. 978. In December 2013, Plaintiff underwent the only MRI on record. Tr. 499; 978. On January 28, 2014, Dr. Rosenbaum, a neurologist, reviewed those MRI records and made a preliminary diagnosis of functional memory loss. Tr. 816; 978. No formal testing, or other objective medical evidence appears in the record prior to date of onset. While the ALJ misleadingly stated that "records in 2017 mentioned that the claimant first identified memory difficulty in 2013, which does not go back to the alleged onset date,"[4] these are otherwise clear and convincing reasons.

Plaintiff also argues the ALJ "improperly rejected plaintiff's mental health limitations on the basis of waxing and waning symptoms," and that "the record shows that the claimant's mental functioning has progressively deteriorated." Pl.'s Br. 18. Plaintiff does not identify for the Court where or how the ALJ appears to have relied on "waxing and waning symptoms." Moreover, the issue of whether Plaintiff's mental functioning progressively deteriorated does not appear to be in dispute. What is disputed, however, is the date that Plaintiff's mental functioning deteriorated to the point of disability. Here, the ALJ did not err in relying on uncontradicted objective medical evidence—an MRI performed in December 2013–and a diagnosis of "functional memory loss" on January 28, 2014 to determine the date of disability.

The Court does, however, agree with Plaintiff that the ALJ's reliance on Plaintiff's activities of daily living as a basis for discounting his symptom testimony was in error. The ALJ wrote that Plaintiff's activities belied his claimed limitations. For example, the ALJ noted that he was able to do household chores such as loading the dishwasher, sweeping, mopping, and vacuuming. Tr. 978. He was also "able to cook/prepare simple meals, do laundry, shop, spend

---

[4] Although the 2017 documents state that Plaintiff first identified memory difficulties in 2013, it is clear from the record that Plaintiff identified memory difficulties before then. For example, the ALJ noted earlier in his opinion that "Dr. Gil reported that the claimant's memory was 'clearly impaired'" in 2012. Tr. 977.

time with friends and care for pets." *Id.* As a preliminary matter, the Court finds the ALJ's

categorization of Plaintiff's activities somewhat misleading. For example, while the ALJ notes

Plaintiff's ability to "cook/prepare simple meals," the record shows only that Plaintiff

microwaved frozen dinners. Tr. 255. By "caring for pets," Plaintiff reported feeding a cat. Tr.

254. By "shopping," Plaintiff reported he was able to grocery shop twice a month or less. Tr.

341. Plaintiff identified no hobbies or interests. Tr. 341. Moreover, the ALJ did not explain how

these activities are inconsistent with Plaintiff's specific symptom testimony. The Ninth Circuit

has cautioned ALJs on this topic, explaining that claimants need not be "utterly incapacitated to

be eligible for benefits, and many home activities may not be easily transferable to a work

environment where it might be impossible to rest periodically or take medication." *Smolen*, 80

F.3d at 1287 n.7; *Molina*, 674 F.3d at 1112–13 ("[A] claimant need not vegetate in a dark room

in order to be eligible for benefits . . . .").

Even though the ALJ erred in relying on Plaintiff's daily activities, the Court finds that

the ALJ's other reasons for discounting Plaintiff's symptom testimony are sufficient to uphold

the ALJ's overall symptom evaluation. *See Batson*, 359 F.3d at 1197 (holding that error by an

ALJ as to one basis for adverse credibility determination is not fatal to the overall determination

if the ALJ gave other reasons which are supported by substantial evidence in the record).

Therefore, the error was harmless.

## V.      The ALJ's Analysis at Step 5

Plaintiff argues the ALJ erred in step 5 by relying on VE testimony provided in response

to an incomplete hypothetical. Specifically, Plaintiff argues that the ALJ's hypothetical failed to

include "all of his limitations." Pl.'s Br. 18–19. Because Plaintiff has not identified what

limitations the ALJ failed to include, the Court assumes that Plaintiff is simply restating the

arguments above: that the ALJ's RFC—and the hypotheticals based on that RFC—did not include all limitations because the ALJ improperly discounted various sources. The Court need not address these arguments again. To the extent the omitted limitations were based on the ALJ's improper rejection of medical opinions, the Court reiterates that the ALJ is instructed on remand to evaluate Dr. Beitnejaneh's opinion and Dr. Gil's opinion, and to determine whether additional limitations should be incorporated into Plaintiff's RFC and any resulting hypotheticals.

### VI.    Onset date

Lastly, Plaintiff argues the ALJ improperly concluded that Plaintiff was disabled as of January 28, 2014, rather than January 1, 2014 or earlier. Specifically, Plaintiff appears to argue that the ALJ committed legal error by 1.) failing to comply with remand orders from the district court and Appeals Council and 2.) improperly determining the onset date of Plaintiff's mental impairments.

In his original opinion, dated June 26, 2014, the ALJ concluded that Plaintiff was disabled as of January 1, 2014. On appeal, the district court determined the ALJ erred in his treatment of the record and remanded the case for further administrative proceedings. Upon remand, the ALJ concluded that the January 1, 2014 date of onset was a typographical error, and that his original opinion intended to find Plaintiff disabled as of January 28, 2014. Tr. 970. On January 28, 2014, Dr. Rosenbaum reviewed Plaintiff's MRI, met with Plaintiff, and provided Plaintiff with a provisional diagnosis of "functional memory loss." Tr. 816.

A reviewing court's remand order may include "detailed instructions concerning the scope of the remand, the evidence to be adduced, and the legal or factual issues to be addressed." *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989). Deviation from such an order is legal error which may warrant reversal. *Id.* at 885–86. However, an ALJ's failure to follow a remand order alone is

not a proper basis for remand. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136–

1138 (9th Cir. 2011). Rather, an "ALJ's errors are relevant only as they affect that analysis on

the merits. A claimant is not entitled to benefits under the statute unless the claimant is, in fact,

disabled, no matter how egregious the ALJ's errors may be." *Id.* at 1138. The issue therefore

remains whether the ALJ's decision is based on substantial evidence and is free of legal error.

*Id.*; *see also Wick v. Astrue*, 2009 WL 2393106, *2–15 (D. Or. July 31, 2009) (ALJ failed to

comply with a remand order but reversal was only warranted to the extent that the court found

harmful error in regard to the other issues expressly raised and briefed by the claimant) (citing

*Sullivan v. Hudson*, 490 U.S. 877, 885–86 (1989)); *Hernandez–Devereaux v. Astrue*, 614

F.Supp.2d 1125, 1134 (D. Or. 2009) ("to the extent that the ALJ here failed to properly follow

the [remand] instructions, she committed reversible error unless the errors were harmless, i.e.,

they would not have affected the ALJ's ultimate conclusions") (citation omitted).

Here, it is not clear whether the district court remanded the case only as it related to the

period before January 1, 2014. Rather, the district court ordered that:

> Upon remand, the ALJ shall reconsider the medical opinion evidence and
> identify the weight assigned to the opinions and reasons for that weight;
> reconsider Claimant's statements and the lay witness testimony regarding the
> severity, intensity, and persistence of Claimant's symptoms; re-evaluate
> Claimant's RFC; and, to the extent that Claimant's RFC has changed over time,
> identify the date of that change as well as the evidence supporting that
> conclusion. If necessary, the ALJ shall conduct a de novo hearing and obtain the
> assistance of a VE or medical expert. The Court holds, however, that whether
> the assistance of a medical expert is needed is a determination within the ALJ's
> discretion.

*Morris v. Colvin*, 2016 WL 4435080, at *6 (D. Or. Aug. 17, 2016). The court went on to state

that "the Commissioner's decision finding no disability [before] January 1, 2014 is REVERSED,

and this case is REMANDED for further proceedings consistent with this Opinion and Order."

*Id.* While ambiguous, a reasonable ALJ could interpret the order as instructing the ALJ to

determine date of onset without regard to whether that date fell before or after January 1, 2014. Here, noting that the original January 1, 2014 onset date was a typographical error, the ALJ relied on the medical records of a neurologist to determine January 28, 2014 as the date of onset. Because the ALJ reasonably followed the instructions of the district court, he did not commit legal error.

Plaintiff also argues—briefly—that the ALJ erred in determining the date of onset altogether. Specifically, Plaintiff states that "ALJ again improperly ignored considerable evidence of Plaintiff's cognitive defects prior to January 1, 2014, and admitted 'It is hard to know when he became disabled exactly[.]' (Tr. 981). Thus, the onset date is at least ambiguous" and the ALJ failed to make an informed inference determining the onset date. Pl.'s Br. 20. Plaintiff then cites to SSR 83-20 and *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991).

SSR 83-20 suggests that "[t]he onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in [substantial gainful activity] (or gainful activity) for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected." 1983 WL 31249, at *3 (Jan. 1, 1983). Thus, "when the evidence regarding date of onset of mental impairment is ambiguous . . . the ALJ should determine the date based on an informed inference." *Morgan*, 945 F.2d at 1082. In certain cases, "[s]uch an inference is not possible without the assistance of a medical expert." *Id.* at 1083. Under ordinary circumstances, however, "an ALJ is equipped to determine a claimant's disability onset date without calling on a medical advisor." *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017). In fact, "SSR 83-20 does not apply when the record has no meaningful gaps. A medical advisor is not required when, despite some inadequacies, 'a relatively complete medical chronology' of the claimant's

condition during the relevant time period is available." *Id.* (quoting *Pugh v. Bowen*, 870 F.2d 1271, 1278 & n.9 (7th Cir. 1989)).

Here, the ALJ made an informed inference determining the onset date and there are no meaningful gaps in the record. In his first opinion, incorporated by reference in his second opinion, the ALJ lays out a timeline of Plaintiff's declining cognitive deficits. The ALJ noted, for example, that Plaintiff underwent surgery for colon cancer in September 2013. Tr. 29. In October, he presented "to Kaiser with worsening memory, concentration, and cognitive problems." *Id.* In November, Plaintiff reported "having trouble finishing a sentence or putting his shoes on." *Id.* In December, Plaintiff received an MRI which "showed scattered small patchy areas T2/FLAIR hyperintensity in the cerebral white matter, attributable to chronic microvascular ischemic disease and general cerebral atrophy." *Id.* This MRI stands as the first objective evidence of cognitive decline. On January 28, 2014—the date of onset according to the ALJ—a neurologist reviewed the MRI results, interviewed Plaintiff, and provided a provisional diagnosis of functional memory loss. *Id.* After that date, records continue to show decline. *Id.*; Tr. 981. Because there are no meaningful gaps in the medical record, and the ALJ provided convincing rationale for the date selected, the ALJ did not err in setting the onset date at January 28, 2014.

## VII.    Remand for Benefits/Further Proceedings

The decision whether to remand for further proceedings or for immediate payment of benefits is within the Court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide

legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.*; *see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

Plaintiff argues that a remand for the award of benefits is appropriate because crediting the improperly discredited evidence as true would require the ALJ to find Plaintiff disabled as of February 1, 2011. Pl.'s Br. 21. As discussed above, the ALJ only erred in discrediting the medical opinions of examining doctors Beitnejaneh and Gil. Even credited as true, these opinions alone would not require the ALJ to find Plaintiff disabled. Rather, they would require the ALJ to modify Plaintiff's RFC. Whether the resulting RFC would require the ALJ to find Plaintiff disabled is an undeveloped issue. Thus, because it is unclear what impact crediting the improperly rejected medical opinions would have on the ultimate disability determination, the Court declines to remand this case for the payment of benefits.

CONCLUSION

The decision of the Commissioner is reversed and remanded for further administrative proceedings to consider whether Plaintiff was disabled between February 1, 2011 and January 27, 2014.

IT IS SO ORDERED.

Dated this 17 day of December, 2018.

_____
MARCO A. HERNÁNDEZ
United States District Judge